Good morning, Your Honors. May it please the Court, my name is Ronald Kraus and I represent the appellant Jose Hernandez-Vasquez. I'd like to reserve three minutes for rebuttal. That's fine. Go ahead, sir. As a threshold matter, the interlocutory order here satisfies the three conditions for appealability under the Cohen v. Beneficial test. First of all... I just have some background to get out of the way so I understand this. Is it correct that at one point in time in Arizona, pursuant to the administration of medication, possibly pursuant to 4241, I'm not sure, your client had competency restored sufficiently so he could engage in a trial? Is that correct, based on the record? You allude to it, or actually I think the government alludes to it in their brief, and I'm just not clear on that because the Ninth Circuit opinion doesn't seem to specifically say that, and I was trying to figure out, like, where did that come from? Well, my understanding of the timeline, and if I'm wrong, I'm sure Mr. McArthur will correct me. The murder indictment was in May 2017, and he was ordered to have a psychiatric exam, and a competency hearing was held in October 2017, and at that time, in October 2017, the ruling was that he was not competent to stand trial. I'm so sorry. I'm going to interrupt you. That's not what I meant. I'm good with Western District and Middle District. I'm talking about the Arizona case that was the subject of the Ninth Circuit opinion, I think, in 2008. Yes, I believe you're right, Your Honor. I believe there was some restoration of competency at that point. Okay, because I'm trying to figure out, was this an instance where he was never restored to competency, or had it occurred on one occasion before? Yes, I think that that's correct, but certainly since I think the earliest date here was 2018 or 2019, September 2019, that the determination was made that competency was unlikely to be restored. Fine. I just wanted to get that out of the way. Go ahead. With respect to the three conditions for interlocutory appeal under Cohen, first, this order to dismiss the indictment conclusively determines a disputed issue. The indictment is dismissed, and it conclusively determines that the appellate will be forced to face prosecution and trial while being subject to indefinite civil commitment. The second condition is that the order involves an important issue that's separate from the merits of the action. Quite obviously, dismissing an indictment is wholly separate from the merits of the murder charge. That is, the issue of appealability is wholly separate from the murder charge. Why is it important? Obviously, it's significant, but the court and this court have been fairly sparing, sparse in our allowance of expansion of these kinds of appeals, and we've routinely found that things that can be remedied after the fact don't count. We've usually seen it limited to the core rights of things like speech and debate, double jeopardy. This doesn't fall within that ground, right, in that there is no absolute right not to be tried or there's no absolute right not to be indicted that exists. So why does it fit within that very narrow category? Well, the Supreme Court and this court have both addressed the importance of this issue. In the Droke decision, the Supreme Court said that exempting an incompetent defendant from facing trial and perpetuity is fundamental to an adversary system of justice. It's trial, right, but that's not indictment. I think we would agree that there's a fundamental right not to be tried while you're incompetent, but that's not what you're asking for. You're asking not to be subject to a pending indictment. Why is that something? Well, I'm not – I suggest that there's no distinction between facing a trial and being on an indictment and facing a trial and an incompetent actually going to trial. But aren't there just three categories of cases in criminal cases, criminal trials, where the courts have recognized the ability to have an interim appeal? And this is not one of them. Why should we – and those are examples where going to trial would destroy the right that is trying to be preserved. Now here, going to trial would destroy the right to be tried – not to be tried while you're insane or not to be tried while you cannot understand the proceedings around you. So why should we go off into this entirely new direction? Well, I would suggest that it's not an entirely new direction, that the key element with the narrow exceptions that have been made under Cohen are that, as you have stated, the defendant has a right not to be tried in that circumstance. That's what's going on here. But the conditions to recognize that right not to be tried have been recognized and complied with, and he has been examined as required by statute, and he has been found to be incompetent to go to trial. And as long as he is not then forced to go to trial during his incompetency, that right is not being violated. Well, I'm suggesting that being in the status of facing trial with the murder indictment hanging over him is equivalent. Is that a constitutional right? I think it's the same right. The same right as what? The same right as not to be tried. In facing trial, just as in a case that's actually tried, the defendant needs to be able to consult with counsel and to help him with the defense. The appellant here is not able to do that. All right. And as long as he's not able to do that, he will not be tried. But if the indictment is dismissed, the U.S. attorney can turn around tomorrow and get a new indictment. Well, that's true, which argues for why doesn't the attorney general dismiss the indictment? Well, because this was a homicide, a murder, a willful murder. If one, if I say that hypothetically, allegedly, that if he has tried and if he is fit to understand the proceedings, then we will determine whether it is a homicide. But it would appear to be a homicide. It's a very serious crime. And the government, which is the branch, the agency, who are entitled to bring the indictment, say they do not want the indictment dismissed, that there is grounds for the indictment, and that particularly because the statute of limitations will never expire, that they want to keep that effective so that the defendant can be tried when and if he does regain competency. I understand the government's position. We object to that because the due process protects the defendant from having to even just face the prospect of trial. But he will face it the rest of his life, whether he is presently under indictment or not. Well, he will be civilly committed. That's true. And because of that, there is no need for the indictment to remain. Do you want a constitutional rule that any time there's a 4241 finding followed by a 4246 finding? What? Yes. Yeah, followed by a 4246 finding, that any outstanding indictment should be immediately dismissed? Yes. And where is that? Where are we supposed to come up with that? That comes out of the due process protections for a defendant who is incompetent not to face trial. But the existence of an indictment, I mean, I hope I'm not going over material that we just discussed, but the existence of an indictment, given your clients or other similarly situated persons, what is it that you think they are subject to? I mean, there's going to be no discovery. There's going to be no exchange of briefs. There are going to be no other motions. The system of justice is not engaging with your client while they remain in this state, while there is a finding pursuant to 4246. So the due process violation is the mere existence of this indictment, which your client is not asked to do anything. The mere existence of the indictment is a violation of the Constitution. That's the finding you want us to make? Yes, exactly. While he's under indictment, he's suffering from the strain and emotional turmoil that having an indictment, murder indictment hanging over him provides. Is there a finding somewhere in the record about the mental strain that your client is suffering because of the existence of an indictment? Not specifically, Your Honor. Don't we need a specific finding to find a constitutional violation? Wouldn't we need a specific finding to find a constitutional violation? I mean, you wouldn't want us to find a constitutional violation based on speculation, right? Maybe you would. I don't really think it's speculation here. I think the record is replete with discussions of the turmoil and difficulty that the defendant has, coming from many different directions, including having the murder indictment hanging over him. I will confess I haven't read every piece of paper, but I don't remember seeing in any of the reports a reference to your client suffering specifically because of the existence of an indictment. What I did read is that he is dealing with the guilt and other attendant emotions, feelings, because of what he recalls the interaction with the victim was. That I recall, but that has nothing to do with what we're talking about, which is the existence of the indictment. Well, I would suggest that there is a relation there between his actions and the consequences that the government intends to pursue. I would also suggest that the government's always going to intend to pursue this. So even if we could somehow accept this general speculation as to what may be implicit in the record, which I would suggest we can't, I don't see how that would be any different in the scenario that you're envisioning. Well, the difference being that the government has this indictment hanging over him and he's indefinitely committed anyway. But they always, even if he's not presently under indictment, he will always be in a situation where he can be indicted again. That's correct. And for the rest of his life, he will have to realize that if he regains his sanity, he's going to be tried for murder. That's correct, although the prospects of that appear very minimal. Appear minimal. But that doesn't mean that there is a constitutional right that's being violated because in that case he never will be brought to trial. But that the government is saying if there is a possibility that he will regain his competency, we want to be able to bring him to trial. I see my time has expired. Actually, does there need to be a 4246 finding here in the Third Circuit with regard to your client or for the purposes of our discussion is the 4246 finding that was made in the Western District sufficient for us to have the exchange that we've had? I believe that is sufficient. All right. Thank you so much. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Jeffrey MacArthur for the United States of America. The United States is not trying to hold a jaywalking offense over someone's head indefinitely. This is a murder case with strong evidence, with no statute of limitations, and with a defendant who on a prior occasion has been restored to competency. Suppose there was a statute of limitations. One of the cases I think was, I guess it was the facts of after 15 years. It was a gun offense, so that sounds right. It hit up against the mandatory minimum. Right. Here it does seem a little different, no statute of limitations. It's a murder conviction. But what about this due process notion that your adversary has been talking about? I think the statute of limitations comes into play as well as the possible punishment. Here, as Judge Roth just noted, because of the statute of limitations, he's always going to be facing for the rest of his life the possibility of a murder indictment. Even if this Court would rule against the government today, again, I don't think there's anything stopping us from refiling this indictment tomorrow. That possibility is always there. So whatever mental strain he's having, because of the long statute of limitations, he's always going to be facing that. I think related is the fact that the punishment, the punishment for first-degree murder, in this case would be life. Even for a lesser degree of murder, the punishment is going to be, even under the sentencing guidelines, it's going to be long, you know, 20 years, 30 years. And so there, I think it's important because it's, and I think this was referenced in the Jackson case, it's not like he is being detained for a longer period than he would be punished for. As his detention continues here, he, you know, he's still far away from working off what the ultimate punishment of 20 or 30 years or life would be. So I think that the due process concern there is minimized. I think it's also important to note that the current confinement under 4246 is entirely separate from the criminal indictment. And both implicate due process concerns and both are addressed. The 4246 confinement, as the court asked for the sealed records from Missouri, they were submitted on Friday. And they show that there's regular updates given to the Western District of Missouri regarding his treatment, regarding his condition. So there, there is periodic evaluations and reports to the court. So he has some due process protection there, guarding against an indefinite confinement under 4246. Right, and nothing changes, even if we got rid of the indictment today. Let me ask, there's one question I had about, you alluded to he's been found to be competent at one point. That was the Arizona case, I guess. One thing I didn't understand from the record, there's been the consequential findings that he is, whatever the exact terms is, substantially unlikely to ever regain competence. Yes. That's close enough for our purposes, right? Understood. Does the fact that he had competency restored at one point, should that factor into any of our considerations? Yes, I believe it should. And I was thumbing through the paperwork as Your Honor posed that question to Mr. Krause. And, you know, the supplement that was filed on Friday does, every report kind of, you know, starts at the beginning. So it may be in other places, but I did see on page 148 of that appendix that his prior restoration of competency took almost four years, from September of 2004 to August of 2008, for several counts of illegal reentry. So I think it has been shown that it's been possible on a prior occasion to restore him. I would say that at the outset of this case, at the outset of the treatment to restore competency in this case, it was opined that he would be restorable. And, you know, nothing is certain in science or medicine, there's always new developments, something could change, a new medication, a new form of treatment. He could improve. I don't think he's merely being warehoused in Springfield. I think he's actively, as a medical professional has a duty to do, is trying to make him better. Within our circuit in the Middle District, he was subject to a 4241 and then an extension. Yes. Right. And his status, if you will, didn't change during that period. 4241D suggests that after 4241, you should proceed, proceed is not the verb, it's a different verb, but essentially proceed to a 4246. Is that just superfluous here because of the 4246 that exists in the Western District? If I understand Your Honor's question in the same light that was posed to my adversary at the end of his argument, I do not, I agree with him, I do not think there needs to be a separate 4246 commitment here. The 4246 commitment is a result of he's serving a sentence for illegal reentry in Lewisburg in the Middle District. He's sent out to Springfield for unrelated, you know, treatment unrelated to this case. And at that point, his illegal reentry sentence expires and, you know, the Bureau of Prison says, well, we think he's under 4246, unfit for release to the community. So, you know, again, that's separate. That's good for all purposes is your essential argument. Yes. Okay. I've got a big problem here with jurisdiction. I don't think under Cohen case that we have jurisdiction. This is not one of the three categories of criminal proceeding where the courts generally have recognized that an interim appeal can be taken. And is it your position we do have jurisdiction? No, Your Honor, my position is that you do not have jurisdiction. That the only time that this court would have jurisdiction to hear such an appeal is if the defendant can show a right not to be tried, such as double jeopardy. It's a very limited set of circumstances. Here, he cannot show that he has a right not to be tried because he can always be tried for this, again, respectfully, no matter what happens with this court, the government is free to reindict. And I think it's distinguishable that if he can show a right not to be tried as a matter of law versus as a matter of fact, that it's extremely unlikely that he's going to be tried because it's unlikely that he's going to regain competency. I don't think that's enough to say that he's never going to be tried, even if there's a small remote chance. And so, because of that, I think he has to wait until the conclusion of his proceedings to make any appeal. How do we think about, along those lines, talking about the Cohen factors, how do we think about effectively unreviewable? I presume your position is it never gets to that stage of being effectively unreviewable. I think in this context, as I look at the Cohen factors, everything is intertwined. When you say that it conclusively determines an issue, well, yes, in one hand, it does conclusively determine the issue, but on the other hand, there could always be a re-indictment in the future. Mr. Krause said that the defendant would be forced to undergo trial. Well, he's actually not forced to undergo trial. I think any emotional harm he's feeling is from the emotional harm that anyone who's under indictment would feel. I'm sure that's unpleasant and stressful. But if anything, he should take comfort in the fact that he's not going to be tried as long as he's incompetent. And it is correct to assume that there's no activity on the case. I mean, I know it's not actually stayed, but it's effectively stayed. Yes, there is no activity and it's not formally stayed, but as a practical matter, it is stayed. And I think, you know, the government, again, this is a murder case, and, you know, the government has the concern that the case, that it's, I'm sorry, that the indictment here ensures that this very important case stays alive, even if it's not active right now. He was serving a sentence for illegal reentry. I think from this we can infer that he's not a United States citizen and would be subject to deportation. So as a practical matter, if he were released from his 42-46 commitment and there was no active indictment, it could be a race to reindict him before he was deported. Alternatively, he could be released by the Bureau of Prisons if they didn't see the active indictment pending out there, in which case we would be releasing an alleged murderer to the streets and would be failing to protect the community. So I think there's definitely practical reasons that the government has for keeping this indictment active, even if it's unlikely that he's going to be released. But you do have a detainer on him, though, right? I don't want to – Yes, Ron. He had his initial appearance. You know, he was detained. As a practical matter, I don't think that detainer – that's not what's holding him. Tomorrow he's going to – No, I know it's not what's holding him. Right. I just don't want the disastrous hypothetical to come to fruition, right? I mean, I presume that the 42-46 is what's holding him. He's not going to walk out of the hospital. Right. He should be a detainer. He was detained at his initial appearance in this case. Okay. The prison in Springfield is aware of the indictment, and so that awareness, I think, would also act as a detainer in this matter. And, again, I think this remains the government's prerogative on whether or not someone should be charged. There's been case law that's been cited in my brief that it's the government's discretion on whether and when and how to prosecute. And I don't think this court has the authority to say, just because it's unlikely that he's going to proceed to trial, that he should be – that the indictment should be dismissed. You know, 42-46 is a separate issue from the criminal indictment. Both are separate government interests, and the government retains with its indictment a punitive interest in Hernandez-Vasquez that is not addressed by 42-46. And even should this court accept jurisdiction of this matter, we would ask you to not to dismiss the indictment. So I wanted to discuss for a moment with you a case that I was intrigued by. I believe the pronunciation is Magasova, the Second Circuit case. Are you with me? I'm not, Your Honor, but I'll do my best. Okay. Well, they came up with a test in that instance that when an incompetent defendant's continued detention to restore competency becomes unreasonable. And, you know, they set out a test, and I just wanted to chat for a few moments. How about this? I don't want to hold you at a disadvantage. Just submit something with your ideas on it. It doesn't have to be three pages or something. Yes, Your Honor. I don't want to – it would be – you'd be at a disadvantage. I don't want to do that. Well, I appreciate that. Thanks so much. Thank you. And I'm sorry. I'll give you a site. It's 544 F. 3rd, 387, and it's 2008. And as I mentioned, Second Circuit. And obviously, I'll ask both sides maybe a week, three pages. What's the name of the case again? Magasoba, M-A-G-A-S-S-O-U-B-A. And I'm sure somebody's going to kill me on my pronunciation. Thank you for the courtesy, Your Honor. I'll certainly submit a letter brief in the next week. Yeah. I understood Magasoba to be addressing the 4246 factors. At what point is civil confinement under that statute no longer reasonable? And I think the Second Circuit set up some sort of a balance. But I didn't understand the defendant here to be challenging the confinement orders. He's arguing that the indictment should be dismissed. I don't know that he can challenge 4246 here. Right. Well, why don't we just confirm that, and maybe it's unnecessary. Okay. We'll confirm it on rebuttal. Thank you, Your Honor. Sure. Do we need to discuss Magasoba? Because I take it that you're not focused on the issue of continued detention. You're focused on the due process violation. Am I right? Yes. Okay. So never mind. Yes. I did read that decision, and I didn't think it really applied here. I did want to mention two brief things. Your Honor talked about the effectively unreviewable aspect of Cohen. And this Court stated in the Leotard case that when the right to be free from trial is not vindicated prior to trial, that right can never be recovered. I'm so sorry. Say that again. When the right to be free from trial is not vindicated prior to trial, that right can never be recovered. Well, he is free from trial. He is free from trial. He is exercising his right to be free from trial because of his incompetence and because of the appropriate hospitalization due to the incompetence. I mean, you don't want to – the government could turn around and try him tomorrow, but he's not competent to be tried. Well, that's true, but that's beyond his control. Because he's never going to go to trial, there's never going to be a final judgment. We don't know that he's never going to go to trial, but we do know that he is at this moment free from trial because of the 4246 finding. Because of the recognition of his constitutional right not to be tried if he does not understand the proceedings. Well, I'll just reiterate my assertion that facing trial is equivalent to being tried, given that in order to be tried, you need to go through the process of preparing for trial. Wouldn't that be a big departure from what the Supreme Court said on many different occasions? I've never heard that. I don't think the Supreme Court would treat us very well. And I know we'd like to be treated well. I'd be willing to take the chance. That's great. I think that's all I have. Okay. Well, counsel, thank you so much for those arguments, and we'll take the matter under advisement.